# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 13-1737 |
| ) | |
| v. ) | |
| ) | |
| LEGAL & GENERAL GROUP PLC, ) | **JURY TRIAL DEMANDED** |
| LEGAL & GENERAL AMERICA, INC., ) | |
| LEGAL & GENERAL INVESTMENT ) | |
| MANAGEMENT AMERICA, INC., ) | |
| BANNER LIFE INSURANCE COMPANY, ) | |
| AND ) | |
| WILLIAM PENN LIFE INSURANCE ) | |
| COMPANY OF NEW YORK, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff The Travelers Indemnity Company ("Travelers"), by and through its attorneys,

Kirkland & Ellis LLP,  for its Complaint against Legal & General Group Plc ("L&G Group"),

Legal & General America, Inc. ("L&G America"), Legal & General Investment Management

America Inc. ("LGIMA"), Banner Life Insurance Company ("Banner"), and William Penn Life

Insurance Company of New York ("William Penn") (collectively, "Defendants"), for trademark

dilution, trademark infringement under federal and state law, false designation of origin, unfair

competition, and declaratory judgment, hereby alleges as follows:

**NATURE OF THE CASE**

1.      Travelers' claims arise out of Defendants' willful dilution and infringement of the famous and iconic Travelers Umbrella Mark (as defined below), which Travelers has used since 1960 in connection with the provision of insurance and financial products and services.

2.      Despite being well aware of the Travelers Umbrella Mark and the strong goodwill associated therewith, L&G Group, a company located and doing business in the United Kingdom, entered the United States market and began using an umbrella-shaped logo in connection with offering insurance and financial products and services through its affiliates L&G America, LGIMA, Banner, and William Penn.  Defendants' use of an umbrella-shaped logo is likely to dilute and cause confusion with the famous and distinctive Travelers Umbrella Mark. As shown in the examples set forth below, Defendants have appropriated the most prominent visual aspect of the Travelers brand—the umbrella-shaped logo design—and used a similar umbrella logo as the most prominent visual aspect of their  corporate brand:



| **Travelers' Umbrella Logos** | **Travelers' Composite Logos** | **Defendants' Logos** |

3.      Defendants have used the umbrella logo in a variety of advertising and promotional materials, including their websites, pamphlets, and print advertisements, in order to identify and build goodwill in their brand.  Such use is harmful to both Travelers and the consuming public.

4.      First, Defendants' use of a similar umbrella logo is likely to dilute the strong and famous Travelers Umbrella Mark, which is a unique source identifier within the field of insurance and financial products and services.  Travelers has worked hard to preserve the distinctiveness of its mark by, among other things, policing third-party uses in the fields of insurance and financial products and services.  Because Defendants are using a logo design that is very similar to the Travelers Umbrella Mark in connection with insurance and financial products and services, Defendants' use is extremely likely to dilute the famous Travelers Umbrella Mark, thus severely harming Travelers.

5.      Second, Defendants' use also is likely to cause consumer confusion, mistake, and/or deceit as to the source, origin or association of its products and services.  This is particularly true given the strength of the Travelers Umbrella Mark, the similarity between the parties' respective marks, the fact that both parties offer insurance and financial products and services, and the parties' use of substantially the same marketing channels.  In light of the strong goodwill that the Travelers Umbrella Mark has obtained throughout the United States, consumers could easily believe that Defendants, among other things, are affiliates of Travelers due to their use of umbrella logos when, in fact, that is not the case.

6.      For these reasons, and as explained further below, Travelers seeks permanent injunctive relief to stop Defendants' diluting and infringing activity, as well as monetary damages to compensate Travelers for the harm suffered as a result of Defendants' use of umbrella logos in connection with the promotion and sale of their insurance and financial

products and service in violation of Travelers' prior rights in its famous Travelers Umbrella

Mark.  Travelers also seeks a declaratory judgment that Travelers is not bound by the agreement

between L&G Group and a subsidiary of the prior owner of the Travelers Umbrella Mark.

## THE PARTIES

7.      Plaintiff The Travelers Indemnity Company is a corporation of the State of

Connecticut with a place of business at One Tower Square, Hartford, Connecticut 06183.

8.      Upon information and belief, L&G Group is a company registered in England and

Wales with a place of business at One Coleman Street, EC2R 5AA London, England.  Upon

information and belief, L&G Group has transacted business within Connecticut through its

affiliated subsidiaries and also by negotiating agreements in that state.  Upon information and

belief, L&G Group also owns and maintains interactive websites at www.legalandgeneral.com

and www.legalandgeneralgroup.com, which are publicly available and accessible to consumers

in Connecticut.

9.      Upon information and belief, L&G America is a subsidiary of L&G Group and a

corporation of the State of Delaware with a place of business at 3275 Bennett Creek Avenue,

Frederick, Maryland 21706.  Upon information and belief, at all times relevant to this

proceeding, L&G America has provided insurance products and services in the United States,

including in Connecticut.  Upon information and belief, L&G America owns and maintains a

website at www.lgamerica.com, which is publicly available and accessible to consumers in

Connecticut.

10.     Upon information and belief, LGIMA is a wholly-owned subsidiary of L&G Group

and a corporation of the State of Delaware with a place of business at 8755 West Higgins Road,

Suite 600, Chicago, Illinois 60631.  Upon information and belief, at all times relevant to this

proceeding, LGIMA has provided investment advice services in the United States, including in Connecticut.  Upon information and belief, LGIMA owns and maintains a website at www.lgima.com, which is publicly available and accessible to consumers in Connecticut.

11.     Upon information and belief, Banner is a subsidiary of L&G Group, a part of L&G America, and a corporation of the State of Maryland with a place of business at 3275 Bennett Creek Avenue, Frederick, Maryland 21706.  Upon information and belief, at all times relevant to this proceeding, Banner has provided insurance products and services in the United States, including in Connecticut.  Upon information and belief, Banner has a website at https://www.lgamerica.com/newbannermainsave.htm, which is owned and operated by L&G America and is publicly available and accessible to consumers in Connecticut.

12.     Upon information and belief, William Penn is a subsidiary of L&G Group, a part of L&G America, and a corporation of New York with a place of business at 100 Quentin Roosevelt Boulevard, Garden City, New York 11530.  Upon information and belief, at all times relevant to this proceeding, William Penn has provided insurance products and services in the United States.  Upon information and belief, William Penn has a website at https://www.lgamerica.com/wpmainsave.htm, which is owned and operated by L&G America and is publicly available and accessible to consumers in Connecticut.

**JURISDICTION AND VENUE**

13.     This action arises under the federal Trademark Act, 15 U.S.C. § 1051, *et seq.*, and the related law of the State of Connecticut.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  Because Travelers and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest

and costs, this Court also has diversity jurisdiction under 28 U.S.C. § 1332.  Further, this Court

has supplemental jurisdiction over Travelers' state-law claims pursuant to 28 U.S.C. § 1367(a)

because those claims are substantially related to Travelers' federal claims.

14.    This Court has personal jurisdiction over Defendants and venue is proper in this

district pursuant to 28 U.S.C. § 1391(b) and (c) because Travelers is located and is being harmed

in this district, Defendants conduct business in this district, and/or the activity about which

Travelers complains has taken place and is continuing to take place in this district.

## TRAVELERS, ITS INSURANCE AND FINANCIAL PRODUCTS AND SERVICES, AND ITS FAMOUS UMBRELLA TRADEMARK

15.    Travelers has been in the insurance business for more than 150 years.  It has long

been one of the leading providers of a wide range of insurance, surety, risk-management, and

financial products and services to businesses, government units, associations, and individuals in

the United States.  Over the years, Travelers has offered and sold a variety of insurance and

financial products and services, including life insurance and annuities.

16.    Today, Travelers is among the largest writers of personal property and casualty

insurance through independent agents in the United States.  Its services are sold in all 50 states

under the Travelers Umbrella Mark through agents and brokers, direct marketing (including toll-

free telephone numbers and Internet websites), and/or salaried employees.

17.    For decades, Travelers, its affiliates and predecessors, including its predecessors-

in-interest (collectively, the "Travelers Companies") have used the umbrella trademark shown

below or substantially identical versions thereof (collectively, the "Travelers Umbrella Mark").



18.    Since at least 1960, the Travelers Companies have used the Travelers Umbrella Mark as a corporate logo and as a trademark in connection with the provision of insurance and financial products and services.

19.    In 1998, Travelers Group Inc., then the ultimate parent of Travelers, merged with Citicorp to create Citigroup, Inc. ("Citigroup"), which offered banking, insurance and investment operations.

20.    Subsequently, in 2002, Citigroup spun off Travelers Property Casualty Corp., which owned all of Travelers, into an independent company, and granted it a license to use the Travelers Umbrella Mark.

21.    In an arms-length transaction and through a Trademark Acquisition Agreement (the "TAA") in 2007, Travelers' ultimate parent, The St. Paul Travelers Companies, Inc. ("Travelers' Parent"), agreed to acquire the worldwide right, title and interest in and to the Travelers Umbrella Mark and assumed certain contracts from a wholly independent corporation, Citigroup. Upon the closing of the transaction, Travelers became the owner of the Travelers Umbrella Mark.

22.    Today, Travelers owns numerous valid and subsisting United States trademark registrations for the Travelers Umbrella Mark, as shown in the attached Exhibit A.  Copies of the certificates of registrations for these marks are attached as Exhibit B.

23.    The registrations set forth in Exhibit A constitute *prima facie* evidence of

Travelers' ownership of and exclusive rights to use the Travelers Umbrella Mark in connection with the services recited in the registrations.

24.     In addition, Travelers is the owner of several applications to register the Travelers Umbrella Mark with the United States Patent and Trademark Office, as shown in the attached Exhibit C.

25.     Travelers also owns and has maintained common law rights to the trademarks set forth in Exhibits A, B, and C, by virtue of its *bona fide* use in commerce of the marks throughout the United States.

26.     Travelers also uses, and owns common law rights in, "realistic" versions of the Travelers Umbrella Mark in connection with the promotion and sale of its insurance and financial products and services, including the examples shown below:













27.     The Travelers Companies have established valuable trademark rights and goodwill in the Travelers Umbrella Mark by virtue of their long use and registration of that trademark, the substantial promotional and marketing efforts under that trademark, the expenditure of vast sums in advertising and promotional activities under that trademark, the substantial sales of products and services offered under that trademark, and third-party acclaim and attention.

28.     The products and services offered, sold, and advertised in connection with the Travelers Umbrella Mark have generated substantial revenues.  Such revenues have exceeded $125 billion in the period of 2008 to 2012 alone.

29.     Travelers also has expended many millions of dollars over the years advertising and promoting its products and services throughout the United States under the Travelers Umbrella Mark in various media and forms (*e.g.*, television, magazines, newspapers, websites, and sponsorships, including the Travelers Championship PGA golf tournament), including tens of millions of dollars annually in recent years.  Travelers' television advertisements prominently featuring the Travelers Umbrella Mark have appeared on major national network and cable television stations and during popular television shows and other programming such as national sporting events watched by millions.

30.     As a result of the long and extensive use of the Travelers Umbrella Mark, and the significant sales, promotion, advertising, third-party acclaim, and commercial success under that mark, the Travelers Umbrella Mark has achieved such widespread public exposure and recognition that it is highly distinctive and has been well-known and famous among the general consuming public of the United States for many years.

### DEFENDANTS' DILUTION AND INFRINGEMENT OF THE FAMOUS TRAVELERS UMBRELLA MARK

31.     Defendants have used and are using the confusingly similar umbrella logos shown below and variations thereof, among others (collectively the "Infringing Logos"), as their corporate logo and in connection with the promotion, offering, and sale of their insurance and financial products and services in the United States, including life insurance and investment management products and services.

   

   

32.     Upon information and belief, at all times relevant to this proceeding, L&G Group has actively directed the activities of, has had the authority to bind, and has acted jointly with L&G America, LGIMA, Banner, and William Penn with respect to each Defendant's adoption and use of the Infringing Logos, and has encouraged, facilitated, and contributed to these Defendants' adoption and use of the Infringing Logos.

33.     Defendants have used and are using the Infringing Logos to promote, offer, and sell their insurance and financial products and services in the United States through a variety of forms.  For instance, one of the Infringing Logos appears prominently on L&G America's headquarters in Urbana, Maryland, as seen in the below picture:



34.     In addition, the Infringing Logos prominently appear on each and every page of Defendants' websites, including www.legalandgeneral.com, www.legalandgeneralgroup.com,

www.lgamerica.com, www.lgim.com, https://www.lgamerica.com/newbannermainsave.htm, and

https://www.lgamerica.com/wpmainsave.htm.  Examples of screenshots from these websites are

provided below:









35.    Defendants use the umbrella design portion of the Infringing Logos alone, without their brand names, in the "favicon," or website icon, which appears in an Internet browser's address bar, next to the website's name in a user's list of bookmarks, and also next to the website's title that appears in the tabs of the browser.  An example of an image of the favicon that Defendants currently use on www.legalandgeneral.com, www.lgamerica.com, www.lgim.com, https://www.lgamerica.com/newbannermainsave.htm, and https://www.lgamerica.com/wpmainsave.htm, appears below.



36.    Defendants also have used the Infringing Logos in other advertisements and promotional materials, such as brochures, pamphlets, and promotional videos.  Examples of screenshots from promotional videos using the Infringing Logos are provided below:







37.    The uses depicted above reflect Defendants' recent decision to expand their use of

the Infringing Logos in the United States.  Indeed, Defendants have progressively encroached upon Travelers' rights to the famous Travelers Umbrella Mark by expanding their use of the Infringing Logos in order to trade off on the goodwill associated with Travelers' mark.

38.     Prior to 2011, Banner and William Penn used individual brand logos that, as seen below, were distinct from the Travelers Umbrella Mark:

 

39.     However, Banner and William Penn significantly expanded their use of the Infringing Logos starting in late 2011 by discontinuing all use of the above Banner and William Penn brand logos, and instead using only the Infringing Logos to identify Banner, William Penn, and L&G America, thus diluting and infringing the Travelers Umbrella Mark.  In particular, according to a "Brand Microsite" launched by L&G America as a marketing tool for its new brand initiative, "[b]eginning October 4, 2011, [L&G America] will market [its] two life insurance companies, Banner Life and William Penn Life of NY under a single national brand, Legal & General America."  The same website also instructs brokers not to use Banner and William Penn's old logos, and that "only the Legal & General America logo will be used."  As demonstrated by the screenshot below from L&G America's "Brand Microsite," the "single national brand" is identified by the Infringing Logos:



40.     As the microsite and screenshot shown above make clear, and upon information

and belief L&G America has actively directed the activities of, has had the authority to bind, and

has acted jointly with Banner and William Penn with respect to Banner and William Penn's

adoption and use of the Infringing Logos, and has encouraged, facilitated, and contributed to

these Defendants' adoption and use of the Infringing Logos.

41.     As a part of its rebranding initiative, L&G America also has used and made

available to brokers the following online advertisements, which prominently feature the

Infringing Logos:





42.    Travelers has not consented to Defendants' use of the Infringing Logos.

43.    Defendants' use of the Infringing Logos has damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Travelers, the Travelers Umbrella Mark, and Travelers' reputation and goodwill associated with the Travelers Umbrella Mark.  Defendants' use of the Infringing Logos also is detrimental to the public's interest in being free from confusion as to the source, sponsorship, and/or affiliation of Defendants' products and services.

44.    Defendants' use of the Infringing Logos is likely to dilute the distinctiveness of the famous Travelers Umbrella Mark.

45.    Defendants' use of the Infringing Logos is likely to cause confusion, mistake, and/or deception as to the source or origin of Defendants' products and services and commercial activities, and is likely to falsely suggest a sponsorship, connection, license, and/or association of

Defendants and/or their products and services with Travelers and/or its products and services.

46.    Upon information and belief, Defendants were aware of the Travelers Companies' prior rights in the famous Travelers Umbrella Mark before selecting and using the Infringing Logos, and thus Defendants have acted willfully with respect to Travelers' rights.

### THE PARTIES' PRIOR DISCUSSIONS AND TRAVELERS' ATTEMPTS TO RESOLVE THE DISPUTE

47.    Travelers and L&G Group have engaged in protracted discussions over a period of several years in an attempt to resolve Travelers' concerns about Defendants' use of the Infringing Logo in the United States, to no avail.  During the course of these discussions, Travelers discovered that Defendants have continued to expand their use of the Infringing Logos in the United States.  As Travelers and L&G Group's discussions have reached an impasse, Travelers has had no choice but to file this litigation in order to protect its rights to the famous Travelers Umbrella Mark.

48.    Defendants have asserted that a two-page letter agreement entered into between Salomon Smith Barney ("SSB") and L&G Group on February 16, 1999 (the "Letter Agreement") bars Travelers from asserting any trademark claims against Defendants in connection with their expanded use in the United States of the Infringing Logos because, according to L&G Group, the Letter Agreement constitutes consent by Travelers to Defendants' use.  But Travelers is not bound by the Letter Agreement or any of its terms, for several reasons, including the following. First, Travelers was not a party to the Letter Agreement.  Second, the Letter Agreement contained a non-transferability clause, and it was not in fact transferred to Travelers.  Third, Defendants' interpretation of the Letter Agreement is contrary to well-established principles of contract interpretation, and even if the Letter Agreement is so interpreted, it should not be enforced.  Fourth, even if the Letter Agreement was transferred in whole or in part to Travelers,

Travelers and Defendants mutually rescinded the Letter Agreement through their course of conduct.  Fifth, Defendants are estopped from asserting that the Letter Agreement binds Travelers based on, among other things, Defendants' willful silence and acquiescence to Travelers' position that Travelers is not bound by the Letter Agreement throughout the parties' course of conduct over the years, which Travelers has relied upon to its detriment by, among other things, expanding its use, promotion, and advertising of the Travelers Umbrella Mark. Sixth, the Letter Agreement has terminated, and thus is no longer in effect.  Accordingly, Travelers is not bound by the Letter Agreement, which, *inter alia*, is inapplicable, unenforceable, null, void, terminated, non-transferrable, and/or has expired.

**FIRST CLAIM FOR RELIEF**
**<u>Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)</u>**

49.     Travelers repeats and realleges each and every allegation set forth in paragraphs 1 through 48 of this Complaint.

50.     Based at least on the distinctiveness of the Travelers Umbrella Mark; the duration and extent of use of the trademark; the duration and extent of advertising featuring the trademark; the geographic area in which products and services have been sold and advertised featuring the trademark; the nature of the trade channels used to market products and services featuring the trademark compared to the trade channels through which L&G America, LGIMA, Banner, and William Penn sell and intend to sell their products and services; the degree of public recognition of the Travelers Umbrella Mark; and the federal registrations of that trademark, the Travelers Umbrella Mark has become famous, as that term is used in Section 43(c) of the Lanham Act, and has been famous for many years.

51.     The actions described above of L&G America, LGIMA, Banner, and William Penn, all occurring after the Travelers Umbrella  Mark became famous, are likely to cause dilution of the famous Travelers Umbrella Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

52.     Upon information and belief, L&G Group is liable for vicarious trademark dilution and contributory trademark dilution as a result of its relationship with the other Defendants and its encouragement of, facilitation of, and contribution towards the other Defendants' diluting activities, as described above.

53.     Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

54.     As a direct and proximate result of the actions of Defendants alleged above, Travelers has been damaged and will continue to be damaged.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement Under Section 32(a)**
**of the Lanham Act, 15 U.S.C. § 1114(a)**

55.     Travelers hereby repeats and realleges each and every allegation set forth in paragraphs 1 through 54 of this Complaint.

56.     Without Travelers' consent, L&G America, LGIMA, Banner, and William Penn used and continue to use in commerce the Infringing Logos, as described above, in connection with the offering, sale, and advertising of insurance and financial products and services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

57.     Upon information and belief, L&G Group is liable for vicarious trademark infringement and contributory trademark infringement as a result of its relationship with the

other Defendants and its encouragement of, facilitation of, and contribution towards the other Defendants' diluting activities, as described above.

58.    Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

59.    As a direct and proximate result of the actions of Defendants alleged above, Travelers has been damaged and will continue to be damaged.

**THIRD CLAIM FOR RELIEF**
**Trademark Infringement, False Designation of Origin, and Unfair Competition**
**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

60.    Travelers repeats and realleges each and every allegation set forth in paragraphs 1 through 59 of this Complaint.

61.    The actions described above of L&G America, LGIMA, Banner, and William Penn relating to the Infringing Logos are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the products and services and commercial activities of L&G America, LGIMA, Banner, and William Penn, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the Travelers Umbrella Mark, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

62.    Upon information and belief, L&G Group is vicariously and contributorily liable for the other Defendants' trademark infringement, false designation of origin, and unfair competition as a result of its relationship with the other Defendants and its encouragement of, facilitation of, and contribution towards the other Defendants' diluting activities, as described above.

63.    Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

64.     As a direct and proximate result of the actions of Defendants alleged above, Travelers has been damaged and will continue to be damaged.

**FOURTH CLAIM FOR RELIEF**
**Unfair Competition and Trade Practices**
**Under Conn. Gen. Stat. §§ 42-110b-q**

65.     Travelers repeats and realleges each and every allegation set forth in paragraphs 1 through 64 of this Complaint.

66.     By engaging in the acts alleged above, L&G America, LGIMA, Banner, and William Penn have engaged in conduct: (a) that is offensive to public policy, governing statutes, common law principles, and/or established concepts of fairness, and/or (b) that has caused substantial injury to consumers and/or Travelers.

67.     L&G America, LGIMA, Banner, and William Penn committed such acts, and continue to commit such acts, in the conduct of trade or commerce.

68.     Travelers has suffered, and if L&G America, LGIMA, Banner, and William Penn are not enjoined, will continue to suffer, an ascertainable loss of money or property.

69.     By virtue of the above conduct, L&G America, LGIMA, Banner, and William Penn have engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.

70.     Upon information and belief, the actions of L&G America, LGIMA, Banner, and William Penn described above have at all times relevant to this action been willful.

71.     As a direct and proximate result of the actions of L&G America, LGIMA, Banner, and William Penn alleged above, Travelers has been damaged and will continue to be damaged.

- 24 -

### FIFTH CLAIM FOR RELIEF
#### Common Law Trademark Infringement, Unfair
#### Competition, and Misappropriation

72.     Travelers repeats and realleges each and every allegation set forth in paragraphs 1

through 71 of this Complaint.

73.     The actions described above of L&G America, LGIMA, Banner, and William

Penn constitute common law trademark infringement, unfair competition, and misappropriation

of Travelers' goodwill under the common law of Connecticut and other states.

74.     Upon information and belief, L&G Group is vicariously and contributorily liable

for common law trademark infringement, unfair competition, and misappropriation as a result of

its relationship with the other Defendants and its encouragement of, facilitation of, and

contribution towards the other Defendants' diluting activities, as described above.

75.     Upon information and belief, the actions of Defendants described above have at

all times relevant to this action been willful.

76.     As a direct and proximate result of the actions of Defendants alleged above,

Travelers has been damaged and will continue to be damaged.

### SIXTH CLAIM FOR RELIEF
#### Declaratory Judgment that
#### Travelers is Not Bound by the Letter Agreement

77.     Travelers repeats and realleges each and every allegation set forth in paragraphs 1

through 76 of this Complaint.

78.     An actual case or controversy appropriate for resolution by declaratory relief

exists between Travelers and Defendants.

79.     Defendants, by and through L&G Group, allege that by virtue of the Letter

Agreement, Travelers consented to their use in the United States of the Infringing Logos, and

thus is barred from objecting to such use or from asserting claims of trademark dilution or trademark infringement.

80.   Travelers is not bound in any way by the Letter Agreement or any of its terms.

81.   The Letter Agreement is inapplicable, unenforceable, null, void, terminated, non-transferrable, and/or has expired.

82.   In the years since the Letter Agreement, both Travelers and L&G Group have acted as if the Letter Agreement did not apply and was not in force or effect, and thus the Letter Agreement should not be enforced pursuant to the doctrines of acquiescence and equitable estoppel.

83.   Further, the Letter Agreement does not prevent, prohibit, or stop Travelers from asserting and maintaining any of the other claims for relief in this Complaint.

84.   Accordingly, Travelers is entitled to judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring that Travelers is not bound in any way by the Letter Agreement or any of its terms, and that the Letter Agreement does not prevent, prohibit, or stop Travelers from asserting and maintaining any of the other claims asserted in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Travelers prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.   An Order declaring that Defendants' use of the Infringing Logos infringes the Travelers Umbrella Mark, is likely to dilute the Travelers Umbrella Mark, and constitutes unfair competition and unfair trade practices under federal and/or state law, as detailed above;

B.      An injunction permanently enjoining Defendants and their employees, officers, directors, principals, subsidiaries, parents, affiliates, related companies, brokers, agents, and all persons in active concert or participation with any of them:

1.      From using or registering the Infringing Logos and any designs, logos, or marks that are confusingly similar to or likely to dilute the Travelers Umbrella Mark; and

2.      From representing by any means whatsoever, directly or indirectly, that Defendants, any products or services offered by Defendants, or any activities undertaken by Defendants, are associated or connected in any way with Travelers;

C.      An Order directing Defendants to destroy or permanently alter all websites, signage, posters, displays, brochures, catalogs, newsletters, manuals, forms, stationery, television commercials, videos, advertising and promotional materials and items, and any other materials and things that bear or display the Infringing Logos and/or any other designs, logos, or marks that are confusingly similar to or likely to dilute the Travelers Umbrella Mark;

D.      An order directing Defendants to cancel all placements of any advertising in any media or format bearing or displaying the Infringing Logos and/or any other designs, logos, or marks that are confusingly similar to or likely to dilute the Travelers Umbrella Mark;

E.      An Order directing Defendants to file with this Court and serve on Travelers' attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the court's injunction;

F.      An Order requiring Defendants to account for and pay to Travelers any and all profits arising from the foregoing acts of infringement, false designation of origin, dilution,

unfair competition, and misappropriation, and increasing such profits for payment to Travelers in accordance with 15 U.S.C. § 1117 and other applicable laws;

G.      An Order requiring Defendants to pay Travelers compensatory damages in an amount as yet undetermined caused by the foregoing acts of infringement, false designation of origin, false advertising, dilution, unfair competition, and misappropriation, and trebling such compensatory damages for payment to Travelers in accordance with 15 U.S.C. § 1117 and other applicable laws;

H.      An Order requiring Defendants to pay Travelers all types of damages available under Conn. Gen. Stat. §§ 42-110b-q in amounts as yet undetermined caused by the foregoing acts of unfair competition and unfair trade practices;

I.      An Order requiring Defendants to pay Travelers' costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117, and other applicable laws, including Conn. Gen. Stat. §§ 42-110b-q;

J.      An Order declaring that Travelers is not bound in any way by the 1999 Agreement or any of its terms; and

K.      Other relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Travelers demands trial by jury in this action of all issues triable by jury in this matter.

Dated: November 20, 2013                   Respectfully submitted,


                                           /s/  *Elizabeth A. Alquist*_____
                                           Elizabeth A. Alquist (ct15643)
                                           DAY PITNEY LLP
                                           242 Trumbull Street
                                           Hartford, Connecticut 016103
                                           Telephone: (860) 275-0100
                                           Fax: (860) 275-0343
                                           eaalquist@daypitney.com

                                           Catherine Dugan O'Connor (ct17316)
                                           DAY PITNEY LLP
                                           One Canterbury Green
                                           Stamford, Connecticut 06901
                                           Telephone: (203) 977-7300
                                           Fax: (203) 977-7301
                                           cdoconnor@daypitney.com

                                           Dale M. Cendali (*pro hac vice* to be filed)
                                           Claudia Ray (*pro hac vice* to be filed)
                                           Shanti E. Sadtler (*pro hac vice* to be filed)
                                           KIRKLAND & ELLIS LLP
                                           601 Lexington Avenue
                                           New York, New York 10022
                                           Telephone: (212) 446-4800
                                           Fax: (212) 446-6460
                                           dale.cendali@kirkland.com
                                           claudia.ray@kirkland.com
                                           shanti.sadtler@kirkland.com

                                           *Attorneys for Plaintiff The Travelers Indemnity
                                           Company*